IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA :

:

v. : Criminal Case No. DKC 17-0189
Related Case No. RWT 05-0209
: Related Case No. DKC 04-0235-11

PERNELL ROBERT PHILPOT

:

**MEMORANDUM OPINION**

Pernell Robert Philpot is serving a 121-month sentence imposed in December 2017 for possession with intent to distribute marijuana and possession of a firearm in furtherance of a drug trafficking offense. He also admitted to violating the conditions of his federal supervised release by committing a new offense. The offense conduct concluded in March 2017, and his projected release date is January 13, 2026. He has filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release). (ECF No. 37). The Government filed an opposition, (ECF No. 41), and Mr. Philpot replied. (ECF No. 44).[1] For the following reasons, the motion for compassionate release will be denied.

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c) (2018). This general rule is subject to certain exceptions, including the

---

[1] The motions to seal (ECF Nos. 38; 42) are GRANTED. The personal medical and other information should remain private, except as recited herein.

compassionate release provision, which allows the Bureau of Prisons ("BOP") to seek a modification of a prisoner's sentence. *See id*. § 3582(c)(1)(A). Under the First Step Act of 2018, the compassionate release provision was modified to allow prisoners to seek a sentencing reduction directly from the court. The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person

2

> or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Judge Hollander described the next step of the analysis:

> Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.
>
> U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):
>
>> 1. Extraordinary and Compelling Reasons. Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>>
>> (A) Medical Condition of the Defendant.—
>>
>> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>> **(I) suffering from a serious physical or medical condition**,

3

>    (II) suffering from a serious functional or cognitive impairment, or
>
>    (III) experiencing deteriorating physical or mental health because of the aging process,
>
>    that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

On March 26, 2020, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, directing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D.N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). The Attorney

4

> General issued a second memorandum to Carvajal on April 3, 2020, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate...." *Id.*
>
> The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19. The DOJ recently adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See also* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

*United States v. Kess*, No. 14-cr-480-ELH, 2020 WL 3268093, at *3–4 (D.Md. June 17, 2020) (footnote omitted).

The defendant argues that he meets the "extraordinary and compelling reasons" standard because he suffers from diabetes, hypertension, and obesity. These conditions, combined with the ongoing COVID-19 pandemic, meet the "extraordinary and compelling" reasons standard. The government concedes as much. (ECF No. 37, at 8). Mr. Philpot argues that his criminal history is not violent, the firearms were inside an apartment, and he agreed to the lengthy sentence imposed in 2017. He contends that the sentence has become more severe due to the viral outbreak. He took courses during his last incarceration. He asserts that his new convictions reflect a temporary back slide and not a renewed commitment to criminal activity. Counsel points to the positive steps Mr. Philpot took during his last release to community supervision, including meaningful employment, and emphasizes his

family support.  Mr. Philpot asks for immediate release, with the addition of home detention to the conditions of supervised release.

The Government objects to a grant of compassionate release, arguing that the § 3553(a) factors counsel against reduction.  Most notably, the government points out that Mr. Philpot's offense came immediately on the heels of another conviction.  Indeed, Mr. Philpot's offense conduct occurred while he was on supervised release in two separate cases.  (ECF No. 41, at 13-14).  Mr. Philpot is now 58, which would normally suggest a reduced likelihood of recidivism.  Mr. Philpot, however, was already 55 when he committed the instant offense.  Mr. Philpot also committed that offense *after* serving a previous prison sentence and while still on supervised release.  In other words, Mr. Philpot has demonstrated a particularly strong need for specific deterrence in the past.  Yet, as the government correctly argues, compassionate release at this early stage could compromise any specific deterrence as he has only served 37% of his current sentence; without compassionate release, his expected release date is not until January 2026.  As the government again concedes, however, Mr. Philpot is at increased risk by virtue of the fact that he is currently housed at FCI Elkton.  (ECF No. 41, at 14).  As of the date of this opinion, that facility currently houses 174 inmates and two staff members who have tested positive for COVID-19, and has already seen nine deaths as a result of the outbreak.  Bureau

6

of Prisons, COVID-19 Update, (https://www.bop.gov/coronavirus/index.jsp) (last accessed July 23, 2020).

Because of the extent of the outbreak, FCI Elkton has been the subject of extensive habeas litigation in the United States District Court for the Northern District of Ohio. On April 22, Judge Gwinn of that court granted a preliminary injunction mandating that certain especially vulnerable inmates be transferred out of the facility immediately, finding that FCI Elkton's "'dorm-style' design guarantees that inmates remain in close proximity to one another." See *Wilson v. Williams*, No. 4:20-CV-00794, 2020 WL 1940882, at *1 (N.D. Ohio Apr. 22, 2020), *enforcement granted*, No. 4:20-CV-00794, 2020 WL 2542131 (N.D. Ohio May 19, 2020), and *vacated*, No. 20-3447, 2020 WL 3056217 (6th Cir. June 9, 2020).

Despite the presence of COVID-19 generally and the enhanced risk of severe illness faced by someone with Mr. Philpot's underlying medical conditions, and the particular concern at FCI Elkton, the § 3553(a) factors weigh against release. Mr. Philpot has demonstrated a cavalier attitude towards court supervision outside of the BOP. His current sentence, imposed for crimes committed during a term of supervised release from prior prison sentences, gives the court pause both as to the dangers Mr. Philpot would pose to the community *and* as to his ability to follow social distancing and other public health guidelines on release. Just as

importantly, release now would neither reflect the seriousness of his offense, nor provide adequate deterrence – specific or general. While the quantity of marijuana found was minimal, the firepower was not, consisting of three weapons and ammunition.  Mr. Philpot conceded that the firearms were possessed in furtherance of drug trafficking.  He had already served very significant sentences for drug distribution in the past, but seems to have reverted too easily to that way of life when finances were tight.  No doubt his remorse is sincere, and Judge Titus remarked that there is something good in him.  Ultimately, his pattern of criminal conduct, while on supervised release, speaks more loudly than expressed remorse.  The goals of sentencing have not yet been accomplished.

    For the foregoing reasons, Defendant's motion for compassionate release will be denied by separate order.

                                        /s/
                                 DEBORAH K. CHASANOW
                                 United States District Judge